**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE LYNN SWICK, | : | Civil No. 3:18-CV-0546 |
| Petitioner, | : | |
| v. | : | |
| SUPT. LONNIE OLIVER, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Petitioner Jamie Lynn Swick filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her 2008 convictions in the Bradford County Court of Common Pleas, Pennsylvania. (Doc. 1.) She names Lonnie Oliver, the Superintendent of SCI-Cambridge Springs as the Respondent.[1] Respondent has filed a response to the § 2254 petition (Doc. 11), and Swick has filed a traverse (Doc. 17). For the following reasons, the court will dismiss the petition as time-barred. A certificate of appealability will not be issued.

**BACKGROUND**

On August 29, 2008, a jury convicted Swick of two counts each of involuntary deviate sexual intercourse, statutory sexual assault, and indecent

---

[1] Petitioner also names the Commonwealth of Pennsylvania and the Pennsylvania Attorney General as respondents in this action. However, as custodian of petitioner, Superintendent Oliver is the proper respondent and the remaining respondents shall be dismissed from this action with prejudice. *See Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004).

assault.  The convictions stem from a two-year sexual relationship with a minor.  Swick was sentenced on December 15, 2008, to an aggregate sentence of 206 to 412 months' incarceration.  (Doc. 12-2 at 13, 15.)  Swick filed a timely notice of appeal on January 8, 2009.  (*Id.* at 16.)  On May 3, 2010, the Pennsylvania Superior Court affirmed Swick's conviction but remanded the case for resentencing holding that Swick's convictions of statutory sexual assault and indecent assault merged with her involuntary deviate sexual intercourse convictions.  (Doc. 1 at 38–46, *Commonwealth v. Swick*, 106 MDA 2009 (Pa. Super. May 3, 2010) (slip op.)).   The trial court resentenced Swick on July 19, 2010, to a term of 180 to 360 months' incarceration.  (Doc. 1 at 47–48.)  Swick did not appeal her new sentence.  (Doc. 11 at 10.)

On August 12, 2011, Swick filed a timely petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9545, *et seq.*  After counsel was appointed, an amended petition was filed in November 2013.  (Doc. 13–5.)  The PCRA court dismissed all but two claims.  Following an August 29, 2014 hearing on the remaining claims, the Bradford County Court of Common Pleas denied the PCRA petition on September 17, 2014.  (Doc. 1 at 49–53.)  Swick filed a timely *pro se* notice of appeal on October 17, 2014.  On August 25, 2015, the Pennsylvania Superior Court affirmed the PCRA court's denial of the petition.  (*Id.* at 54–61, *Commonwealth v. Swick*, 1776 MDA

2014, 2015 WL 5973361 (Pa. Super. Aug. 25, 2015) (non-precedential)). The Pennsylvania Supreme Court denied Swick's petition for allowance of appeal on February 1, 2016. (*Id.* at 62, *Commonwealth v. Swick*, 794 MAL 2015 (Super. Feb. 1, 2016) (slip op.)). On March 15, 2016, the PCRA court granted Swick's counsel leave to withdraw from the case. (*Id.* at 63.)

On April 27, 2016, Swick filed a second *pro se* PCRA petition. (Ex. 18.) The PCRA court denied the petition as untimely filed on June 27, 2016. (Doc. 1 at 66.) Swick appealed the dismissal of her second PCRA petition to the Superior Court of Pennsylvania. On April 21, 2017, the Pennsylvania Superior Court held that Swick's judgment of sentence was final on August 18, 2010, her 2016 petition was untimely, and that she failed "to invoke any PCRA exception to overcome the time bar." (Doc. 1 at 72, *Commonwealth v. Swick*, 1172 MDA 2016, 2017 WL 1423603, *3 (Pa. Super. Apr. 21, 2017) (non-precedential)). Her petition for reargument was denied on May 8, 2017. (*Id.* at 74, *Commonwealth v. Swick*, 1172 MDA 2016 (Pa. Super. May 5, 2017)). On January 3, 2018, the Pennsylvania Supreme Court denied Swick's petition for allowance of appeal. (*Id.* at 75, *Commonwealth v. Swick*, 484 MAL 201 (Super. Jan. 3, 2018)).

Swick filed her present § 2254 petition on March 2, 2018, pursuant to the mailbox rule.[2] (Doc. 1.) Respondent contends the petition is untimely. (Doc. 11.) In her reply, Swick notes her second post-conviction appeal became final on March 2, 2018 and thus her petition is timely. Alternatively, she seeks equitable tolling based on abandonment of counsel and governmental interference in her ability to timely file her § 2254 petition. She also claims the recent discovery of new evidence that if presented to the jury, would have supported her alibi defense, and proven her innocence. (Doc. 17.)

## JURISDICTION

28 U.S.C. § 2254 allows a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

[2] The "prisoner mailbox rule" dictates that the filings of *pro* se prisoners are deemed filed on the date deposited in the prison mailbox or given to prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266 (1988).

## DISCUSSION

### A. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") supplies a one-year statute of limitations for § 2254 petitions filed by a person in state custody. *See* 28 U.S.C. § 2244(d)(1). Specifically, 28 U.S.C. § 2244(d) provides in relevant part:

> (1) A 1-year period of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of ---
>
>     (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)–(2); *see also Wall v. Kholi*, 562 U.S. 545, 550 (2011) (discussing application of § 2244's timeliness requirements); *Romansky v. Supt. Greene SCI*, 933 F.3d. 293, 298-99 (3d Cir. 2019) (same).

Swick had one year from the date her conviction became final to seek federal habeas corpus relief via 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1).[3] Swick's judgment of sentence became final on Wednesday, August 18, 2010, when her time for seeking a direct appeal in the Pennsylvania Superior Court expired. *See* PA. CON. STAT. § 9545(b); Pa. R.A.P 903(a) (notice of appeal to Superior Court "shall be filed within 30 days after the entry of the order from which the appeal is taken"). Thus, Swick had one year from that date, or until Thursday, August 18, 2011, to file a federal habeas corpus petition. Swick's habeas corpus petition, filed on March 2, 2018, exceeded the one-year filing limitations period. Consequently, unless Swick's petition is subject to statutory or equitable tolling, it is time-barred. These tolling issues are addressed next.

---

[3] Although 28 U.S.C. § 2244(d)(1) provides for other triggering events of the one-year limitations, none apply here. *See* 28 U.S.C. § 2244(d)(2)–(4).

## B. Statutory Tolling

Swick asserts that the pendency of her post-conviction collateral challenges tolled the limitations period pursuant to statute. The one-year AEDPA limitations period is statutorily tolled during the pendency of a "properly filed" state post-conviction or other collateral review proceeding. *See* 28 U.S.C. § 2244(d)(2). A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Jenkins v. Supt. of Laurel Highlands*, 705 F.3d 80, 85 (3d Cir. 2013) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). A state post-conviction motion or other collateral review is "pending" from the date it is filed until the date the court rules on the petition as well as "the time during which an appeal could be filed even if the appeal is not eventually filed." *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000).

On August 12, 2011, six days prior the end of the one-year statute of limitations, Swick filed a timely PCRA petition. Consequently, the AEDPA's statute of limitations was successfully tolled from August 12, 2011 until February 1, 2016, when the Pennsylvania Supreme Court denied Swick's petition for allowance of appeal. Absent further statutory or equitable tolling, the AEDPA's

limitation period expired on February 8, 2016, which deadline includes the six remaining days in the period of limitations prior to the tolling period.[4]

Swick filed her second *pro se* PCRA petition on April 27, 2016, more than two months after the AEDPA's statute of limitations expired. The PCRA court dismissed the petition as untimely filed on June 27, 2016. The Pennsylvania Superior Court affirmed the dismissal, explicitly finding the application was untimely under the PCRA and Swick did not meet any of the PCRA's grounds for tolling of the limitations period. (Doc. 1 at 72.) The Pennsylvania Supreme Court denied her petition for allowance of appeal on January 3, 2018. This court is bound by the state court's finding that Swick's second PCRA was untimely. *See Merritt v. Blaine*, 326 F.3d 157, 167 (3d Cir. 2003).

Where a petitioner's application "for state post conviction relief [is] rejected as untimely …. [it is] not 'properly filed' under § 2244(d)(2)" and is not entitled to statutory tolling of the one-year limitations period. *See Allen v. Seibert*, 522 U.S. 3, 7 (2007); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that where the state court dismissed a petitioner's PCRA petition as untimely, the petition "was not 'properly filed' and not entitled to statutory tolling under §

---

[4] Technically, Sunday, February 7, 2016, concluded the one-year filing period. However, as the last day of the limitations period fell on a Sunday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(C).

2244(d)(2)"). "Thus, if a state court determines that an application is untimely, that is the end of the matter for purposes of statutory tolling of AEDPA['s] limitations period, regardless of whether it also addressed the merits of the claim, or whether its timeliness rule was entangled with the merits." *Jenkins*, 705 F.3d 85 (internal quotation marks and citations omitted).

Because the state court clearly ruled that Swick's second PCRA petition was untimely, it provides no basis for tolling the AEDPA's limitations period beyond February 8, 2016. As a result, Swick's habeas corpus petition, filed on March 2, 2018, is time-barred.

## C. Equitable Tolling

Next, Swick asserts that certain exceptional circumstances warrant equitable tolling of the AEDPA's 1-year limitations period. AEDPA's one-year limitations period may be subject to equitable tolling when the petitioner shows that she "has been pursuing [her] rights diligently," and yet "some extraordinary circumstance stood in [the] way and prevented timely filing" of the habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013). "However, courts need to be 'sparing in their use of' the doctrine," *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (quoting *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)), as it does not extend to a "garden variety claim of excusable neglect." *Schlueter v. Varner*, 384 F.3d 69, 83 (3d Cir. 2004) (citing

9

*Irwin v. Dep't Veterans Affairs*, 498 U.S. 89, 96 (1990)). Accordingly, equitable tolling is used only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006). The petitioner bears the burden of showing that she is entitled to benefit from equitable tolling. *See Pace*, 544 U.S. at 418.

Swick alleges first that the Pennsylvania Department of Corrections' one-month delay in February 2018 in providing her with a copy of her certified account statement constitutes "governmental interference" calling for equitable tolling of the limitations period. (Doc. 17 at ¶ 10.) However, as the AEDPA's statute of limitations expired two years earlier, on February 8, 2016, the prison officials alleged one-month delay in supplying her a copy of her inmate trust account in does not equitably toll the statute.

Next, Swick seeks equitable tolling of the limitations period due to an allegation of attorney abandonment. Swick claims that following a May 2010 letter, her appellate counsel abandoned her. (*Id*. at ¶¶ 20–35.) Contrary to Swick's assertion, the AEDPA's 1-year limitations period was subject to statutory tolling during the pendency of her timely filed PCRA petition until February 8, 2016, which tolling was due to the efforts of her counsel. Moreover, Swick's allegation of attorney abandonment has no foundation in fact. Swick's appellate counsel successfully appealed to the Pennsylvania Superior Court securing a reduction of

her sentence, which led to her resentencing in July 2010. Swick's counsel then filed a PCRA petition on August 12, 2011. The record includes a series of letters from defense counsel apprising Swick of his efforts to maintain their communication and seeking her input on his proposed amended PCRA petition and other issues. (Doc. 6 at 3–11.) Additionally, appellate counsel advised Swick in September 2015, that following the Pennsylvania Superior Court's decision, his firm "will be taking no further legal action on your behalf and your appeals have been exhausted." (Doc. 6 at 9.) Thus, the court finds that Swick's unfounded allegation of attorney abandonment does not warrant equitable tolling.

Finally, Swick claims that due to the 2011 flood of her appellate counsel's office, she was unable to file a timely habeas corpus petition until she obtained documents from the sentencing court in 2018. The record reveals that shortly after filing Swick's PCRA petition on August 12, 2011, her counsel's office was flooded in September 2011, destroying most of their records. (Doc. 6 at 3.) However, Swick's argument that she diligently pursued copies of her case records necessary to file her habeas corpus petition is not supported by the record. Swick knew of the loss of her appellate counsel's case files, at the latest, on October 4, 2013. (*Id*. at 3.) Although Swick argues that she requested her records from counsel during a February 1, 2015, phone conversation, she does not offer any evidence that she took affirmative steps to ensure that counsel acted diligently

11

upon her request.  *See Schlueter v. Varner*, 384 F.3d 69, 72, 77 (3d Cir. 2004) (finding that petitioner did not exercise due diligence by inquiring about the filing of the petition after asking counsel to file a petition).  As a result, Swick has failed to prove due diligence to obtain her files.

In any event, on March 15, 2016, appellate counsel provided her with "all of the significant filings made on [her] behalf as well as transcripts of the proceedings", which counsel stated would cover all of the information Swick would need to pursue further legal action on her own behalf.  (*Id.* at 11.)  Swick fails to explain why she was unable to file her habeas corpus petition for another two years after she received the records from appellate counsel.  Accordingly, she is not entitled to equitable tolling based on her appellate counsel's loss of documents following a 2011 flood of his office.

In sum, based on the record before the court, Swick has not presented an exceptional circumstance that would warrant equitable tolling of AEDPA's 1-year limitations period.

### D.  Actual Innocence

Swick asserts that she discovered new evidence in 2018 to bolster her alibi defense and prove her actual innocence.  Aside from statutory and equitable tolling of AEDPA's limitation period, the Supreme Court has also recognized that a credible showing of actual innocence may allow a prisoner to pursue her

constitutional claims on the merits despite the existence of "a procedural bar … or … expiration of the statute of limitations" under the fundamental miscarriage of justice exception. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To prevail under this standard, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted [her] in the light of new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "In this context, actual innocence refers to factual innocence, not legal insufficiency." *Reeves v. Fayette SCI*, 897 F.3d 154, 160 (3d Cir. 2018) (citing *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012)).

When evaluating whether it is more likely than not that no reasonable juror would convict the petition based on the "new evidence," the court "must consider all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). The gateway actual innocence standard is "demanding" and satisfied only in the "rare" and "extraordinary" case where "a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 386, 392 (internal quotation marks and citations omitted).

Swick claims that in 2018, when she requested her sentencing records, she discovered new evidence "in support of her alibi defense" that "she was not residing in Pennsylvania during the alleged crimes." (Docs. 1 at 25–26, 17 at 3.) Clearly, Swick knew her own residency at the time of the alleged crimes and had multiple earlier opportunities to raise this defense. In any event, Swick's claim of "actual innocence" based on proof of her residency on the dates of the commission of the crimes does not prove her innocence. This evidence only proves that she did not live in Pennsylvania on the dates in question, not that she was physically absent from the location(s) in Pennsylvania where the crimes occurred. More importantly, this "new evidence" does not undermine the testimony of other witnesses or her own admission of guilt. The Superior Court summarized the following facts presented at her jury trial:

> Between August 2006 and January 2008[,] Swick (born 5/14/1980) was having sexual relations with B.J.M (born [1/1993]). One of B.J.M's friends told B.J.M's father that he saw B.J.M and Swick having sex. Trooper Peter Shiposh interviewed B.J.M. about Swick and B.J.M. admitted that the two had oral sex approximately 90 times, vaginal intercourse about 100 times and hundreds of other sexual encounters. Trooper Shiposh interviewed Swick and she admitted to having a sexual relationship with B.J.M. and agreed to the number of incidents with B.J.M. Misty Ackley, a Bradford County Children and Youth Services (CYS) employee, also interviewed Swick about her contact with B.J.M. and asked Swick for more specifics and details that she had not disclosed to the officer.

Case 3:18-cv-00546-JPW-PT Document 20 Filed 07/14/20 Page 15 of 16

> Swick was arrested on March 26, 2008 and charged with 90 counts of IDSI, 100 counts of statutory sexual assault and 100 counts of indecent assault.
>
> * * *
>
> At trial, the Commonwealth presented B.J.M., Trooper Shiposh, B.J.M's friend, B.J.M's father and Ackley as witnesses.
>
> * * *
>
> Swick testified in her own defense and denied having sex with B.J.M. She stated that she had no recollection of any interviews between her and Trooper Shiposh and Ackley, stating that she has a bad memory because of multiple medications she was prescribed by a careless doctor.
>
> The jury convicted Swick of two counts each of IDSI, statutory assault and indecent assault; one of each charge attached to an event in 2007 and then the remaining charges to an event in 2008.

(Doc. 1 at 39–40.) Giving deference to these factual findings, Swick admitted on more than one occasion to the crimes with which she was charged. *See Palmer v. Hendricks*, 592 F.3d 386, 91–92 (3d Cir. 2010) (holding that state court factual findings are presumed correct at the federal level). As a result, Swick's claim of "actual innocence" fails as well.

## CONCLUSION

For the foregoing reasons, Swick's petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied as untimely filed.

15

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of this constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Swick fails to demonstrate that a COA should issue.

The denial of a COA does not prevent Swick from appealing the order denying her petition so long as she seeks, and obtains, a COA from the Third Circuit Court of Appeals. *See* Fed. R. App. 22(b)(1).

An appropriate order will issue.

<div style="text-align:right">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

</div>

Dated: July 14, 2020